

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/24/2013

| | | |
|---|---|---|
| IN RE: § | Case No. 11-38621 |
| BADAR SHARIF; aka KHAN; fdba § | Chapter 7 |
| BRAUCK STEERS; dba UNIVERSAL § | |
| DISTRIBUTING; fdba AB SUNMART § | |
| CORP; fdba AB MOBIL CORP; fdba AB § | |
| MILK MART CORP; dba CHAUHAN § | |
| CORPORATION; dba BA PROPERTIES § | |
| MANAGEMENT INC.; fdba AB 3033 § | |
| ELGIN INC.; fdba AB 3305 DOWLING § | |
| INC.; fdba AB 2405 KELLY INC.; fdba AB § | |
| PETROLEUM INC., § | |
| Debtor(s). § | Judge Isgur |

## MEMORANDUM OPINION

The Trustee's objection to exemptions, (ECF No. 62), is overruled.

### Background

Badar Sharif first filed a Chapter 7 petition on August 22, 2011. (Case No. 11-37121, ECF No. 1). Mr. Sharif failed to file a creditor's matrix. As a consequence, the case was dismissed on September 8, 2011.

Mr. Sharif filed a second Chapter 7 petition on October 4, 2011. (ECF No. 1). The Schedules submitted by Mr. Sharif at the time of filing reflected that he had no interests in real property. (ECF No. 4). Mr. Sharif listed the following assets on his original schedules: (i) $75.00 cash on hand; (ii) $2,500.00 as household goods; (iii) $500.00 as wearing apparel; and, (iv) a 2002 "Toyota Truck" valued at $2,500.00 (ECF No. 4). Mr. Sharif claimed all scheduled property as exempt using the federal exemptions in § 522.[1] (ECF No. 5).

---

[1] When Mr. Sharif submitted amended schedules he claimed exemptions under Texas law.

1

Mr. Sharif first attended a § 341 meeting on December 30, 2011. (Pl.'s Ex. 49). Mr. Sharif affirmed that neither he nor his wife had interests in any real estate. (Pl.'s Ex. 49 at 3, 9). However, when asked by the Trustee about the address on his tax return (4402 Trailwood Drive Sugarland, Texas ("Trailwood property")), Mr. Sharif explained that his wife lived there and the house belonged to her. (Pl.'s Ex. 49 at 11-12). The Trustee recommended that Mr. Sharif amend his schedules to reflect an interest in the Trailwood property and itemize all property listed generally as "household goods" and "wearing apparel." (Pl.'s Ex. 49 at 14). The Trustee also asked that Mr. Sharif include any additional assets he failed to disclose on the original schedules. (Pl.'s Ex. 49 at 14-15). Mr. Sharif was to amend his schedules in advance of the next § 341 meeting, which was then set for January 13, 2012. (Pl.'s Ex. at 18).

Mr. Sharif filed a motion to dismiss the case soon after the initial § 341 meeting.[2] (ECF No. 32). The Trustee objected. (ECF No. 34). Mr. Sharif failed to amend the Schedules by the January 13, 2012 § 341 meeting. Mr. Sharif explained that because he moved to dismiss the case, it would be moot to amend the schedules until the Court ruled on the motion to dismiss. (Pl.'s Ex. 50 at 24). The Trustee again requested that Mr. Sharif amend his schedules before the next § 341 meeting set for February 10, 2012. Thereafter, Mr. Sharif's attorney, Mr. Newman[3], withdrew. (ECF No. 41). Mr. Sharif subsequently retained alternate counsel, withdrew the motion to dismiss, and filed amended schedules reflecting newly disclosed assets. (ECF Nos. 42-48, 55).

---

[2] After Mr. Sharif discovered his largest debt was not dischargeable ($818,129 owed to the State of Texas for unpaid sales tax), he sought to dismiss his case. Mr. Sharif testified that his attorney, Mr. Newman, led him to believe that filing for bankruptcy would resolve the tax debt. (ECF No. 99 at 53).

[3] At the hearing, the Court was advised that the United States Trustee is taking separate action against Mr. Newman. (ECF No. 99 at 89-91). Actions against Mr. Newman are beyond the scope of this opinion.

2

Mr. Sharif, acting on the advice of new counsel, submitted amended schedules on February 9, 2012, which reflected:

(1) An interest in the Trailwood property valued at $188,600.00;

(2) $125.00 in cash on hand;

(3) three newly disclosed checking accounts with funds totaling $369.88;

(4) itemized household goods valued at $3,136.00;

(5) newly disclosed family pictures valued at $10.00;

(6) itemized wearing apparel totaling $330.00;

(7) newly disclosed jewelry valued at $340.00

(8) several newly disclosed businesses owned by Mr. Sharif or his spouse, valued at $0.00;

(9) newly disclosed estimated tax refund valued at $2,000.00;

(10) the vehicle originally described as a "2002 Toyota Truck," changed to "2001 Toyota Tacoma," with the value reduced to $2,000.00; and

(11) newly disclosed Mercedes Benz valued at $9,323.00.

(ECF Nos. 44-48).  Mr. Sharif claimed assets (1), (4)-(7), and (10) as exempt, this time using the Texas exemptions.  (ECF No. 44 at 8).

Mr. Sharif is a United States Citizen and a native of Bangladesh.  Regarding the newly disclosed assets, Mr. Sharif explained that, because of differences in property law between Bangladesh and the United States, he was not aware that he had legally cognizable interests in property that was subject to a security agreement or not titled in his own name.  (ECF No. 99 at 46).  Mr. Sharif claims that because the Trailwood property was refinanced in his wife's name in 2005, he did not believe he had an interest in it.  (ECF No. 99 at 57).  Mr. Sharif further explained that he failed to list the Mercedes Benz in his original Schedules because he had not yet completed payments. (ECF No. 99 at 52).  He testified that he believed that because it was

3

not paid off, he did not own it. (ECF No. 99 at 52). Mr. Sharif explained that his original schedules were not accurate because Mr. Newman did not properly instruct him on how to complete the forms. (Pl.'s Ex. 50 at 43-44). Mr. Newman testified that he failed to explain to Mr. Sharif what was required of him to include in his schedules under United States law. (Pl.'s Ex. 50 at 41).

On March 19, 2012 the Trustee filed an objection to the claimed exemptions, asserting that Mr. Sharif acted in bad faith and with the intent to conceal assets. (ECF No. 62). The Trustee's objection is only with regard to the newly disclosed assets. (ECF No. 99 at 40). This includes: (i) the Trailwood property; (ii) the Mercedes Benz; (iii) various jewelry; and (iv) family pictures valued at $10.00.[4]

## Governing Law

Schedule amendments are liberally allowed, but may be denied if the debtor displayed bad faith or prejudice to the creditors. *In re Williamson*, 804 F.2d 1355, 1358 (5th Cir. 1986). Bad faith requires a showing that a debtor intentionally concealed an asset of which creditors have no knowledge. *McFatter v. Cage,* 204 B.R. 503 (Bankr. S.D. Tex. 1996). "A debtor may not claim as exempt property which he knowingly concealed and failed to disclose to the trustee which normally would be exempt had it been properly scheduled and claimed." *In re Park*, 246 B.R. at 840 (citing *Matter of Dorricott*, 5 B.R. 192, 194 (Bankr. N.D. Ohio 1980)). As the objecting party, the Trustee carries the burden of proving, by a preponderance of the evidence, that the exemptions claimed by the debtor should be disallowed. *In re Pequeno*, 126 Fed. Appx. 158, 163 (5th Cir. 2005). Finally, where appearance of bad faith is attributable to the mistakes

---

[4] The Trustee's objection is with all of Mr. Sharif's newly disclosed assets claimed exempt. (ECF No. 99 at 83). However, the Trustee specifically identified the Trailwood property in his motion. (ECF No. 97 at 3).

4

and oversights of a debtor's counsel, such deficiencies will not be held against the debtor. *In re Ellis*, 454 B.R. 404, 414 (Bankr. S.D. Tex. 2011).

## Analysis

Mr. Sharif initially failed to disclose assets he now seeks to claim as exempt. The Trustee argues that Mr. Sharif intentionally concealed these assets and should not be able to exempt them now. (ECF No. 97 at 8-9). Mr. Sharif argues that his failure to disclose these assets was a mistake that resulted from a misunderstanding of disclosure obligations and is not attributable to bad faith on his part. (ECF No. 83 at 2; ECF No. 99 at 59).

**Failure to Understand Disclosure Obligations**

The Trustee's case rests on demonstrating bad faith.

Mr. Sharif testified that his understanding of property law was that he only had legally recognized interests in assets titled in his name and not subject to a security agreement. (ECF No. 99 at 46). This testimony supports the initial exclusion of the Trailwood property, which was financed in Mr. Sharif's wife's name, and the Mercedes Benz, which was not subject to a secured loan. (ECF No. 99 at 52, 57).

In *Dorricott*, the debtor similarly argued that his incomplete Statement of Financial Affairs resulted from a misunderstanding of his duties. 5 B.R. at 194. The bankruptcy court disagreed, finding the fact that the debtor was an educated university instructor with several decades of experience in the insurance business indicated that the deficiencies were not the result of a simple misunderstanding. 5 B.R. at 194. The bankruptcy court noted that "many less sophisticated debtors are able to understand the simple directions clearly printed on the forms for filing bankruptcy." *Matter of Dorricott*, 5 B.R. at 194-95.

5

In the instant case, Mr. Sharif's similar claim of a failure to understand is not so easily dismissed. Mr. Sharif's formal education terminated after he completed the eighth grade in Bangladesh.[5] (ECF No. 99 at 44). He has no high school, college, or professional training experience. (ECF No. 99 at 45). That being said, Mr. Sharif has lived and worked in the United States for approximately twenty-eight years and in that time has started corporations, financed real estate, and leased and operated several gas stations and convenience stores. (ECF No. 99 at 7-39).

All of the newly disclosed assets could ordinarily be claimed as exempt property under Texas law. (ECF No. 44 at 8-9). This substantially undercuts the Trustee's argument that the nondisclosure was part of a scheme by Mr. Sharif to hide assets. Additionally, the Trustee was not able to successfully impeach Mr. Sharif's testimony that the nondisclosure resulted from his misunderstanding of United States property law. This failure to disclose, given the mitigating circumstances, is not enough for a finding of bad faith.

There is some evidence that supports the Trustee's assertion that Mr. Sharif intentionally concealed the assets he now seeks to exempt. The most important evidence is that Mr. Sharif initially stated that his wife had no interest in real estate. (Pl's Ex. 49 at 8). However, the evidence that supports the Trustee's theory is outweighed by other facts.

**Disclosure of Trailwood Property at Original § 341 Meeting**[6]

With respect to the Trailwood property in particular, although no interest was listed in the original schedules, Mr. Sharif revealed his connection to the property at the first § 341 meeting

---

[5] Instruction was not provided in English. (ECF No. 99 at 44).

[6] The Trailwood property constitutes the vast majority, in terms of value, of purportedly exempt property to which the Trustee objected. As a result, facts indicating a lack of intent to conceal the Trailwood property indicate an overall lack of intent to conceal assets.

6

when he testified that his wife owned the home and had lived there for twelve years.  (Pl.'s Ex. 49 at 12).  Mr. Sharif's disclosure at the § 341 meeting was sufficient to provide the trustee with notice of the asset and give him an opportunity to investigate.  *See McFatter v. Cage*, 204 B.R. at 508.  This further undercuts the Trustee's argument of bad faith with an intent to conceal assets.

**Inadequate Legal Counsel**

Where evidence that supports intentional concealment is attributable to inadequate legal counsel, courts have declined to find bad faith on the part of the debtor.  *In re Ellis*, 454 B.R. at 414.  Mr. Newman's failure to provide Mr. Sharif with direction in preparing his schedules and statement of financial affairs suggests that Mr. Sharif's failure to disclose can, in part, be attributed to inadequate legal counsel.

Mr. Newman's failure to review documents prepared independently by Mr. Sharif, which reflect dubious valuations of his assets, similarly supports this conclusion.  For example, Mr. Sharif listed a monthly income of $2,700.00 on the originally filed Schedules, but he lists his total income to date for the year 2012 at $2,500.00, and total income for the years 2010 and 2011 at $3,800.00.  (ECF Nos. 11, 13).  When asked about the income value at the January 13 § 341 meeting, Mr. Newman expressed that he did not review in detail Mr. Sharif's disclosures or question his valuations.  (Pl.'s Ex. 50 at 40).  He explained that he was "busy at the time," and was "having trouble finding time to prepare it."  (Pl.'s Ex. 50 at 40).  When asked about his incorrect income disclosures, Mr. Sharif explained that he intended to represent $2,500.00 per month for the year 2012, and $3,800.00 per month for the previous 2 years, but misunderstood the disclosure form.  (Pl.'s Ex. 50 at 39).

Mr. Newman failed to explain the schedules and failed to ensure that the Mr. Sharif's assets were sufficiently identified.  (Pl.'s Ex. 50 at 40).  Evidence of inadequate legal counsel

7

supports the finding that Mr. Sharif did not intentionally conceal the assets disclosed on his amended Schedules. Mr. Sharif misunderstood his disclosure obligations largely as a result of failures by his attorney.

## Conclusion

The Court will enter a separate Order in accordance with this Memorandum Opinion.

SIGNED **June 24, 2013.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE